UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

---

JOHN DARR JR.,

    Plaintiff,

v.

HOME DEPOT U.S.A., INC.,

    Defendant.

**Civil Action No.:** 3:24-cv-393

**COMPLAINT**

---

Plaintiff John Darr Jr. ("Plaintiff" or "Mr. Darr"), by and through his undersigned counsel, Eisenberg & Baum, LLP, states his Complaint against Defendant Home Depot, U.S.A., Inc. ("Defendant" or "Home Depot") as follows based upon personal knowledge and belief:

## INTRODUCTION

1. This lawsuit addresses the distressing mistreatment of Plaintiff John Darr Jr., a Deaf individual who has been subjected to a denial of communication access, hostile work environment, and adverse employment action on the basis of his disability. Despite his longstanding and significant contributions to Defendant Home Depot, Mr. Darr has suffered persistent discrimination that violates his rights under federal and state law. This action seeks redress for the Defendant's continuous failure to address, much less rectify, the troubling violations against Mr. Darr at work, despite his appeals for intervention with management.

2. Plaintiff brings this action to compel Defendant to cease unlawful discriminatory practices and implement policies and procedures that will ensure that deaf and hard-of-hearing persons are free from discrimination and abuse. Plaintiff seeks declaratory, injunctive, and

equitable relief; compensatory and punitive damages; attorneys' fees and costs; and all other available remedies to redress Defendant's unlawful disability discrimination in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111, *et seq.*, and the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103.

## PARTIES

3. Plaintiff John Darr Jr. is Deaf and communicates primarily in American Sign Language. He is substantially limited in the major life activities of hearing and speaking within the meaning of federal and state civil rights statutes. He is currently a resident of Seymour, TN. Defendant Home Depot hired him on or around March 26, 2012, as an Associate.

4. Defendant Home Depot U.S.A., Inc., is and was at all relevant times a Delaware corporation with its principal place of business at 2455 Paces Ferry Road, Atlanta, GA 30339. Defendant has a registered address for service at c/o Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction for the federal law claims under 28 U.S.C. §§ 1331 and 1343 because this action arises under the laws of the United States. This Court also has supplemental jurisdiction for the state law claims under 28 U.S.C. § 1367 because those claims are substantially related to the federal law claims.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because, among other things, Defendant resides in this District, and the acts and omissions giving rise to this Complaint occurred in this District.

## STATEMENT OF FACTS

7. Mr. Darr is Deaf and primarily uses American Sign Language (ASL) for communication.

8. To effectively participate in work-related administrative processes and perform his job duties, Mr. Darr requires the assistance of a qualified ASL interpreter.

9. Defendant hired Mr. Darr on or around March 26, 2012, as an Associate at Store #0773 in Knoxville, TN.

10. Mr. Darr's duties included collaborating with other employees on projects, performing in-store merchandising tasks such as organization and display maintenance, and providing customer service.

11. Mr. Darr requires an ASL interpreter to collaborate with other employees and communicate with customers effectively. Without an ASL interpreter, he cannot equally and effectively communicate with English speakers to perform these duties.

12. The machinery associated with Mr. Darr's job duties produced audible beeps to provide information and alert employees to any problems. Without accommodations, Mr. Darr could not hear these noises to perform the job duties associated with them.

13. These audible noises also interfered with the efficacy of Mr. Darr's voice-to-text app, which he attempted to use as an alternative form of communication.

14. Over the course of his ten-year employment, Mr. Darr repeatedly asked for a qualified ASL interpreter to understand proceedings such as ad hoc meetings, trainings, and administrative processes.

15. Despite these numerous requests, Defendant only intermittently responded to Mr. Darr's accommodation needs throughout his employment.

16. When Mr. Darr began his employment with Defendant, he relied on another employee, Nathan Barnes, for communication support. Mr. Barnes was not a qualified sign language interpreter.

17. Mr. Barnes attempted to interpret the nightly meetings that Defendant required its employees to attend. Defendant never provided a qualified interpreter or other form of adequate communication accommodation for these mandatory meetings.

18. During the early period of his employment, Mr. Darr's supervisor, D'Vonne, who possessed an intermediate-level command of ASL, supported Mr. Darr's communication access.

19. Before each staff meeting, D'Vonne provided Mr. Darr with a list of topics to be discussed. If Mr. Darr had remaining questions following the meeting, D'Vonne would use ASL to answer them.

20. While this arrangement was an imperfect solution and did not ensure Mr. Darr's equal and effective communication access, it allowed Mr. Darr and D'Vonne to work together relatively well.

21. When Mr. Darr transferred to the South Knoxville store, he once again had to rely on another employee, Christopher, for communication support. Christopher was not a qualified sign language interpreter.

22. Before transferring to South Knoxville, Mr. Darr asked his manager, Brent, what communication accommodations Defendant would provide. Brent only noted that Christopher would be working at the South Knoxville location to provide communication support.

23. When Mr. Darr was not working alongside an employee who knew some ASL, he was forced to communicate with his supervisors and other employees by texting back and forth or using a voice-to-text app.

24. The voice-to-text app, which Mr. Darr provided himself, offered only a partial understanding of spoken conversations. It missed a significant number of words, particularly in the noisy environment of Mr. Darr's workplace.

25. Due to the inadequacy of the voice-to-text app, Mr. Darr was unable to substantively understand his conversations with other employees and supervisors.

26. In or around 2021, when Meghan Fulton became the District Execution Manager, Mr. Darr's lack of communication access intensified, as did the disciplinary action he faced.

27. Following a reorganization of the company reporting structure, Mr. Darr was assigned a new manager, Jim Neustel, who did not know ASL.

28. From this point on, Mr. Darr experienced extreme difficulty communicating at work because Mr. Neustel and Ms. Fulton failed to make meaningful attempts to ensure his communication access.

29. Defendant issued Mr. Darr multiple disciplinary notices for using his personal cell phone on the floor, despite Mr. Darr explaining that he was using it to type notes back and forth with other employees because he had no other means of communication access.

30. Defendant issued disciplinary notices to Mr. Darr in November 2018 and September 2022 for his cell phone use, disregarding his disability-related explanation.

31. Defendant eventually used these disciplinary notices to justify Mr. Darr's termination.

32. Mr. Darr requested a work cell phone from Ms. Fulton as an accommodation to avoid further similar problems, but she denied this request, stating that only supervisors could have work cell phones.

33. In 2022, Mr. Darr began experiencing interpersonal difficulties with two other Associates, Mark and Savannah.

34. Without appropriate communication access, Mr. Darr was unable to resolve these issues with Mark and Savannah.

35. Mark and Savannah repeatedly hid Mr. Darr's cell phone from him, excluded him socially, and submitted multiple false reports about Mr. Darr's behavior to management.

36. Mr. Darr reported this mistreatment to Mr. Neustel. Rather than write an official report, Mr. Neustel simply told Mr. Darr to speak with Savannah and Mark to resolve their issues.

37. Mr. Darr was unable to effectively communicate with Savannah and Mark due to the lack of communication access. He had difficulty explaining the nature of the conflict from his perspective because English is not his primary language.

38. Mr. Neustel instructed Mr. Darr to write out his complaint despite Mr. Darr's lack of fluency or proficiency in English.

6

39. During the evaluation of Mr. Darr's complaint, Mr. Neustel did not secure an interpreter.

40. On May 19, 2022, Mr. Neustel sent Mr. Darr a text message asking him to meet with Ms. Fulton and Jeff Huguelet, a human resources employee, the following day.

41. Mr. Darr replied, requesting an interpreter to ensure his supervisors' full understanding of his perspective and to facilitate his own equal and effective communication access.

42. Mr. Neustel stated that Ms. Fulton was "working on getting an interpreter."

43. When Mr. Darr arrived for the meeting on May 20, 2022, no interpreter was present.

44. Mr. Darr again requested an interpreter, expressing anxiety about having a disciplinary conversation without one to facilitate equally effective communication.

45. Ms. Fulton insisted that she and Mr. Darr use a pen and paper to communicate during the meeting, disregarding Mr. Darr's discomfort with this option due to his lack of proficiency in English.

46. When Mr. Darr's written account did not precisely match his oral recounting of events, Ms. Fulton and Mr. Huguelet questioned and criticized him, failing to understand that the discrepancy was due to Mr. Darr's lack of proficiency in written and oral English.

47. To attempt to resolve the communication errors, Mr. Darr called his own interpreter through the Sorensen Video Relay Service, a government-provided on-demand interpreter service for deaf individuals.

48. Due to internet connectivity issues, the video relay interpreter could not provide Mr. Darr with a full understanding of the proceedings. The interpreter repeatedly froze on-screen, making it impossible for Mr. Darr to understand the communications.

49. Despite the clear communication barriers, Ms. Fulton proceeded to issue Mr. Darr a final disciplinary notice without an interpreter present.

50. Following continued conflict with Meghan and Mark stemming from Mr. Darr's lack of communication access in the workplace, Ms. Fulton and Mr. Neustel met with Mr. Darr on December 28, 2022, to inform him of his termination.

51. Mr. Darr requested an interpreter prior to this termination meeting.

52. Despite his request, no interpreter was present at the termination meeting.

53. Ms. Fulton asked Mr. Darr to write notes back and forth with her during the termination meeting.

54. Mr. Darr explained that he could not fully understand the meeting using written notes and requested an interpreter again.

55. Ms. Fulton made a single attempt to secure a Virtual Remote Interpreter but continued with the meeting when one was not immediately available.

56. Ms. Fulton's denial of his accommodation request caused Mr. Darr to become very emotional because of this denial of his rights. He feared losing his job because he could not effectively communicate his version of events.

57. Mr. Neustel and Ms. Fulton accused Mr. Darr of "talking back" and being disrespectful during this meeting because he asserted his right to equal communication access.

58. Mr. Neustel and Ms. Fulton excused Mr. Darr back to his job, but only a few minutes later, Mr. Neustel pulled Mr. Darr from the floor and asked for his employee badge.

59. Mr. Neustel then escorted Mr. Darr from the building, effectively terminating his employment without ensuring Mr. Darr understood what was happening.

60. Mr. Darr was confused and did not understand that he was being terminated. Without an interpreter, he could not understand the proceedings and felt lost, afraid, and confused.

61. Throughout his employment, Mr. Darr felt socially excluded by his coworkers due to their bullying and his lack of communication access.

62. Defendant created a hostile work environment for Mr. Darr by refusing to provide appropriate communication access.

63. Defendant's supervisors and coworkers took advantage of Mr. Darr's lack of communication access at work; because his primary language is ASL, he was less able to counteract their incorrect statements and became a prime target for bullying and harassment in his predominantly English-speaking workplace.

64. Without proper communication access, Mr. Darr felt isolated, silenced, and discriminated against throughout his employment with Defendant.

65. Defendant's actions and inactions created a hostile work environment and made Mr. Darr feel depressed, anxious, and afraid at work.

66. Mr. Darr had planned to work for Defendant for the rest of his life. He is devastated by his job loss and has had difficulty finding employment since his termination.

67. Mr. Darr has suffered lost wages and lost employment opportunities as a result of his wrongful termination.

68. Defendant failed to properly accommodate Mr. Darr by refusing to provide a qualified interpreter to facilitate his meaningful participation in the administrative process regarding his complaints.

69. Because of Defendant's discrimination, Mr. Darr suffered from embarrassment, violation of his civil rights, emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and irreparable damage to his reputation and career prospects.

70. Defendant's persistent failure to provide reasonable accommodations, coupled with the hostile work environment and discriminatory termination, constitute a clear pattern of disability discrimination against Mr. Darr, violating his rights under applicable disability discrimination laws.

## CONDITION PRECEDENT

71. Pursuant to the requirements of 42 U.S.C. § 2000e-5, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Nashville Area Office, on or about May 18, 2023.

72. The EEOC issued a Notice of Right to Sue on July 1, 2024.

73. This Complaint is timely in that it was filed within ninety (90) days of the issuance of the Notice of the Right to Sue.

74. Therefore, Plaintiff has satisfied any and all conditions precedent to the filing of his Complaint.

# CAUSES OF ACTION

## CLAIM I: Violations of Title I of the Americans with Disabilities Act

75. Mr. Darr incorporates by reference all preceding paragraphs and realleges them in support of this claim.

76. At all times relevant to this action, Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, has been in full force and effect and has applied to Defendant's conduct.

77. At all times relevant to this action, Mr. Darr has been substantially limited in the major life activities of hearing and speaking. Therefore, Mr. Darr has a disability within the meaning of the ADA. 42 U.S.C. § 12102(2).

78. Mr. Darr is an employee within the meaning of Title I of the ADA. 42 U.S.C. § 12111(4).

79. Defendant is an employer within the meaning of Title I of the ADA. 42 U.S.C. § 12111(5).

80. Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

81. Title I of the ADA defines discrimination to include "limiting, segregating, or classifying a . . . employee in a way that adversely affects the opportunities or status of such . . . employee because of the disability of such . . . employee." 42 U.S.C. § 12112(b)(1).

82. Title I of the ADA defines discrimination to include "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. §

12112(b)(4).

83. Title I of the ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

84. Defendant discriminated against Mr. Darr on the basis of his disability in violation of Title I of the ADA and its implementing regulations by failing to provide appropriate communication access at work.

85. Defendant has failed to implement policies, procedures, and training of staff necessary to ensure compliance with Title I of the ADA and its implementing regulations.

86. Mr. Darr is entitled to damages and an award of attorney's fees, costs, and disbursements under the ADA. 42 U.S.C. § 12188(a)(1)–(2); 42 U.S.C. § 2000a-3.

### COUNT II: Violations of the Tennessee Disability Act

87. Plaintiff incorporates by reference all preceding paragraphs and realleges them in support of this claim.

88. At all times relevant to this action, the Tennessee Disability Act, Tenn. Code Ann. § 8-50-103, has been in full force and effect and has applied to Defendant's conduct.

89. Plaintiff is an individual with a disability as defined by the TDA, and at all relevant times, was qualified to perform the essential functions of his job. Tenn. Code Ann. § 85-50-103.

90. The TDA prohibits employers from discriminating against employees.

91. Defendant discriminated against Plaintiff on the basis of his disability by failing to provide Plaintiff with reasonable accommodations, as requested by Plaintiff, and terminating

Plaintiff for reasons motivated by his disability in violation of the TDA.

92. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer economic losses, emotional distress, and other damages.

93. Plaintiff is therefore entitled to injunctive relief, reinstatement to Plaintiff's former position, back pay for lost wages and benefits, and reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff John Darr respectfully requests that this Court:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title I of the ADA and TDA.

B. Enjoin Defendant from implementing or enforcing any policy, procedure, or practice that discriminates against deaf and hard-of-hearing individuals;

C. Order Defendant:

i. Develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing individuals in all aspects of employment;

ii. Develop, implement, promulgate, and comply with a policy to ensure that Defendant will inform deaf or hard of hearing employees and job applicants of their right to effective auxiliary aids and services, including qualified ASL interpreters;

iii. Develop, implement, promulgate, and comply with a policy to ensure that Defendant will promptly provide deaf or hard of hearing individuals with reasonable accommodations, including:

- a. Qualified ASL interpreters for work-related meetings, trainings, and administrative proceedings;
- b. Appropriate visual alerts for audible workplace signals;
- c. Suitable communication devices for day-to-day workplace interactions;

iv. Establish a clear process for requesting and providing accommodations, with designated personnel responsible for managing accommodation requests;

v. Develop and implement a training program for all employees, staff, and other agents about:

- a. The rights of individuals who are deaf or hard of hearing under the ADA and TDA;
- b. Proper procedures for working with ASL interpreters and other accommodations;
- c. Effective communication strategies for interacting with deaf or hard of hearing colleagues;

vi. Conduct this training annually and for all new hires.

D. Award to Plaintiff:

i. Compensatory damages pursuant to the ADA;

ii. Punitive damages pursuant to the ADA;

iii. Reasonable costs and attorneys' fees pursuant to the ADA and TDA;

iv. Back pay for the period since Mr. Darr's wrongful termination pursuant to the TDA;

v. Rehiring of Plaintiff by Defendant pursuant to the TDA;

vi. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

vii. Any and all other relief that this Court finds necessary and appropriate.

Dated: September 27, 2024            Respectfully submitted,

Andrew Rozynski, Esq. (NY# 5054465)
arozynski@eandblaw.com
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
212-353-8700 (tel.)
212-353-1708 (fax)
Attorneys for Plaintiff